IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GREGORY L. ASHE,             )
                                              )
               Plaintiff,         )
                                              )
            v.                 )     C.A. No. 16-956 (MN)
                                              )
NANCY A. BERRYHILL, Acting   )
Commissioner of Social Security,   )
                                              )
            Defendant.     )

## <u>**MEMORANDUM OPINION**</u>

Gary C. Linarducci, LINARDUCCI & BUTLER, P.A., New Castle, DE; David F. Chermol, CHERMOL & FISHMAN, LLC, Philadelphia, PA – attorneys for Plaintiff

Nora Koch, Regional Chief Counsel, Dina White Griffin, Special Assistant United States Attorney SOCIAL SECURITY ADMINISTRATION, Office of the General Counsel, Philadelphia, PA – attorneys for Defendant.

March 29, 2019
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

## I.    INTRODUCTION

Plaintiff Gregory L. Ashe ("Mr. Ashe" or "Plaintiff") appeals the decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his claim for Social Security Disability Insurance benefits under Title II of the Social Security Act.  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Pending before the Court are Plaintiff's motion and Defendant's cross-motion for summary judgment.  (D.I. 10, 13).  Plaintiff seeks remand of his case "for either an award of benefits, based on the overwhelming weight of the medical opinion evidence, or for further development and analysis."  (D.I. 11 at 28).  The Commissioner requests that the Court affirm the decision denying Plaintiff's claim for benefits.  (D.I. 14 at 20).  For the reasons stated below, the Court will grant-in-part and deny-in-part Plaintiff's motion and deny Defendant's cross-motion for summary judgment.  This matter will be remanded for further proceedings.

## II.    BACKGROUND

### A.    Procedural History

On February 21, 2012[1], Mr. Ashe filed an application for Disability Insurance Benefits under Title II, alleging disability beginning December 22, 2009.  (Tr. 149-150).[2]  Plaintiff's claim

---

[1]    There are discrepancies in the record as to the date Mr. Ashe applied for Disability Insurance Benefits, February 21 or February 22, 2012.  For example, the "Application Summary for Disability Insurance Benefits" (Tr. 149-150) states "On February 22, 2012, we talked with you and completed your application for Social Security Benefits."  The "Disability Determination Explanation" (Tr. 68), however, states that Plaintiff "filed for Initial claim for disability on 02/21/2012."  Although the Court does not believe the one-day disparity makes a difference as to the claim, it will use February 21, 2012 as the application date.

[2]    References to "Tr." are to the "Transcript of Social Security Proceedings" filed on January 4, 2017.  (D.I. 5).

was denied initially on June 19, 2012 and again upon reconsideration on March 22, 2013. (Tr. 89-93, 97-101). Plaintiff requested a hearing before the Administrative Law Judge ("ALJ") on April 29, 2013. (Tr. 103-104). The hearing took place on August 12, 2014 during which both Mr. Ashe and David Burnhill ("Mr. Burnhill), an impartial vocational expert ("VE") testified. (Tr. 29-67). After the hearing, on December 19, 2014, the ALJ issued a decision finding that Plaintiff "has not been under a disability within the meaning of the Social Security Act from December 22, 2009, through the date of this decision." (Tr. 11). Plaintiff requested review of the ALJ decision by the Appeals Council on January 8, 2015. (Tr. 6-7). On August 22, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

On October 18, 2016, Plaintiff filed suit in the District of Delaware seeking judicial review of the Commissioner's denial of benefits. (D.I. 1). The parties' completed briefing on the cross motions for summary judgment on May 15, 2017. (D.I. 10-11, 13-15).[3]

## B. Factual History

Plaintiff applied for Disability Insurance Benefits on February 21, 2012 when he was 44 years old. (Tr. 68, 149). Plaintiff became unable to work as of December 22, 2009[4] at the age of 41, which is a "younger person" as defined by 20 C.F.R. §404.1563(d). (Tr. 20, 68, 78). He obtained a GED in 1987 and received specialized automobile technician job training throughout his career as an auto technician. (Tr. 171). According to Plaintiff's February 25, 2012 Disability

---

[3]     The case was reassigned to the undersigned on September 20, 2018.

[4]     Plaintiff was injured in a fall from a bench while at work. (Tr. 33, 36-37). As of August 12, 2014 (the date of the administrative hearing before the ALJ), Plaintiff had an active Worker's Compensation claim. (Tr. 33-34).

Report, he held one job (auto technician) in the 15 years prior to becoming unable to work. (Tr. 171).

### 1. Disability Report – February 25, 2012 (Form SSA-3368)

In his Disability Report dated February 25, 2012 (Form SSA-3368) (Tr. 169-177), Plaintiff asserted that he has the following physical or mental conditions that limit his ability to work (Tr. 170): lumbar fusion; cannot sit for longer than 20 minutes; cannot stand for longer than 30 minutes; medication keeps him from using dangerous equipment; pain keeps him from useful work; and time frame is short without pain. He indicates that he stopped working because of his conditions, but that his conditions had not caused him to make changes to his work activity. (Tr. 170). He also lists the following medications: Flexeral, hydromorphone and Xanax, which were all prescribed by First State Orthopaedics PA. (Tr. 173). Plaintiff lists Dr. Jerry Case, First State Orthopaedics PA, Christiana Hospital, and SOS PT as health care providers who may have medical records about his physical and mental conditions. (Tr. 173-176).

### 2. Disability Report – Appeal – April 30, 2013 (Form SSA-3441)

In his Disability Report – Appeal dated April 30, 2013 (Form SSA-3441) (Tr. 202-207), Plaintiff indicates that he has no new physical or mental limitations and no new illnesses, injuries, or conditions. (Tr. 202). He lists the following treating physicians who may have medical records about his physical and mental conditions: Dr. John Dettwyler, Dr. James Downing (Interventional Spine Pain Consultants, PA), Dr. James Moran and Dr. Bruce Rudin (both of First State Orthopaedics), and Dr. Pawan Rastogi (Delaware Neurosurgical Group). (Tr. 203-204). He also lists the following medications: Advil, Exalgo, Flexeril, and hydromorphone, all prescribed by Dr. Moran at First State Orthopaedics. (Tr. 205).

### 3. Medical History, Treatment, and Conditions

The Court has reviewed all medical records submitted. The relevant medical history begins in December 22, 2009 and continues through August 6, 2014. (D.I. 5-7 – 5-19, Exs. 1F – 33F).

### A. First State Orthopaedics (Drs. Rudin and Moran)

The transcript contains numerous records from First State Orthopaedics from January 4, 2010 through August 6, 2014. (Tr. 445-613, 648-696, 797-801, 984-1051, and 1087-1089). Dr. Rudin preformed three surgeries on Plaintiff's back: (1) June 8, 2010 – total disk arthropathy at L3-4 and L4-5 (Tr. 422-425); (2) March 1, 2011 – posterior segmental instrumentation at L3, L4, and L5 (Tr. 403-404); and (3) January 3, 2012 – posterior lumbar fusion L3-L4, L4-L5 and removal of segmental instrumentation (Tr. 391-302). At Plaintiff's August 6, 2014 appointment, Dr. Rudin recommended a "translumbar interbody fusion at L5-S1 and possibly consider L2-3" and gave Plaintiff a note "to be off of work total disability at this point based on his new testing and his severe level of impairment." (Tr. 1088).

### B. Interventional Spine Pain Consultants, PA (Dr. James Downing)

The transcript contains records from Interventional Spine Pain Consultants, PA/Dr. James Downing dated April 7, 2010, November 11, 2010, September 7, 2011, January 9, 2013, and July 24, 2014. (Tr. 802-805, 1090-1101). Dr. Downing performed two surgical procedures on Plaintiff: (1) November 11, 2010 – lumbar epidural steroid injection fluoroscopically guided (Tr. 1094–1095) and (2) July 24, 2014 – provocative lumbar discography at L2-L3 and L5-S1 fluoroscopically guided (Tr. 803-804). Immediately after the July 24, 2014 procedure, Plaintiff had a CT lumbar spine scan which showed that Plaintiff has "degenerative grade IV annular tear at L2-L3. Grade II annular tear at L5-S1 with bilateral fact arthrosis." (Tr. 805).

### C. Center for Interventional Pain & Spine (Dr. Philip S. Kim)

The transcript contains records from the Center for Interventional Pain & Spine/Dr. Philip S. Kim beginning in January 2013 and continuing through June 2014. (Tr. 769-793, 858-967). On August 1, 2013, due to Plaintiff's continued complaints of ongoing pain, he underwent a trial placement of a spinal cord stimulator with Dr. Kim. (Tr. 871). At a follow-up visit on August 8, 2013, Plaintiff "report[ed] 100% improvement in leg nerve pain, 15% improvement in low back pain and notice a new upper back pain. Patient is unsure if want to proceed with the implant." (Tr. 872). And, at Plaintiff's August 21, 2013 follow-up visit, it is noted that Plaintiff is considering a spinal cord stimulator implant but he wants to do a "pump trial" to compare the two. (Tr. 878-881). On December 3, 2013, Dr. Kim installed a pain pump. (Tr. 795, 1002). While it appears that the pump provided some relief, it did not fully relieve Plaintiff's symptoms and his medication had to be regularly increased. (Tr. 887-960).

### D. Spine and Orthopedic Specialists, Inc. (Craig Weaver, MS, PT, OCS, Cert MDT)

The transcript contains physical therapy records from Spine and Orthopedic Specialist, Inc./Craig Weaver for the months of February, August, and September 2010 and again for the months of January, July, and August 2011. Plaintiff's physical therapy did not yield significant positive results. (*See, e.g.,* Tr. 229 "Recommend hold PT based on response thus far;" Tr. 265 "I would not recommend even any very low-level exercise based on current trend of increasing symptoms and poor positional tolerance;" Tr. 753 "Unfortunately, functional tolerance remains very limited and Greg continues to often shut down for several days due to difficulty managing his pain levels. We have tried to approach this from a chronic pain management perspective with little success and Greg is unfortunately at a stand-still in his current pain and disability pattern.").

## E.     Jerry L. Case, M.D.

At the request of counsel in Plaintiff's worker's compensation action, Plaintiff was examined by Dr. Case on February 24, 2011 (Tr. 271-272), August 11, 2011 (Tr. 269-270), July 30, 2012 (Tr. 614-615), and October 24, 2012 (Tr. 642-643). His February 25, 2011 notes indicate that while Plaintiff was able to "walk with a normal gait," his movement was restricted and he had "pain at the extremes." (Tr. 272). He concluded that "patient remains totally disabled at this time in view of the planned surgery next week." (Tr. 272). The results of the physical exams did not appear to change in the ensuing visits.

His August 11, 2011 notes, however, indicate "the patient does not appear to be significantly better since his surgery on 3/1/11. At this time, the patient remains totally disabled." (Tr. 269-270). Dr. Case's July 30, 2012 notes indicate that Plaintiff "feels that he is somewhat better, but actually his pain level has only slightly improved. He is taking the same amount of pain medication." Dr. Case also indicated that "[a]t this time, the patient would not be capable of full time work as an auto mechanic, which was his previous occupation. Based on his complaints and physical findings at this time, I would think that he could do no more than part time sedentary work with restrictions of avoiding continuous standing and walking, avoiding bending and twisting and no lifting over 10 pounds. He would require the opportunity to get up and move around periodically if in a sit down job." (Tr. 614-615). Similarly, his October 24, 2102 notes state: "I do not think that the patient is capable of more than part time sedentary work at this time. Prognosis is poor that he is going to improve. . . . I think that it is highly unlikely that further surgery is going to be of much help in this case. . . . His subjective complaints are consistent with the objective findings." (Tr. 642-643).

### F.     State Agency Consultants

In June 2012, Michael H. Borek, a state agency physician, reviewed the evidence of record. (Tr. 68-76).  Dr. Borek opined that Plaintiff could lift 20 pounds occasionally and frequently lift 10 pounds, could stand and/or walk a total of 4 hours and sit about 6 hours in an 8-hour workday. (Tr. 73).  He opined that Plaintiff could occasionally perform certain postural activities such as climbing ramps/stairs, balancing, stooping, kneeling, crouching, or crawling.    (Tr. 73). Additionally, Dr. Borek indicated that Plaintiff should avoid concentrated exposure to extreme cold, vibration, and hazards such as machinery and heights.  (Tr. 74).  Dr. Borek concluded that Plaintiff could perform work at a sedentary level.  (Tr. 74).  In March 2013, Robert Palandjian, another state agency medical consultant, reviewed and affirmed Dr. Borek's opinion.  (Tr. 78-87).

At the request of the ALJ during the August 12, 2014 hearing (Tr. 65-66), Plaintiff saw another state agency medical consultant, Sneha Daya on September 8, 2014.  (Tr. 1102-1113). Dr. Daya noted that Plaintiff has trouble showering and dressing and his wife helps him will all activities of daily living.  She stated that Plaintiff had an "antalgic gait and is dependent on a cane for ambulation."  (Tr. 1105).  Her general findings included that Plaintiff has "notable difficulty with range of motion and transitions during all aspects of the exam, and is relying on the cane for stability at those times."  (Tr. 1105).  Dr. Daya concluded that in an 8-hour work day Plaintiff could stand for 5 hours and walk for 5 hours with frequent breaks, sit for 6 hours with frequent breaks, carry and lift 20 pounds occasionally and 10 pounds frequently, reach, handle, feel, grasp and finger frequently, and bend, stoop, crouch, and squat very occasionally and that he "does require a cane."  (Tr. 1105-1106).

### 3. The Administrative Hearing

On August 12, 2014, the ALJ conducted an administrative hearing, at which both Mr. Ashe, and VE, Mr. Burnhill, testified. (Tr. 29).

### A. Plaintiff's Testimony

Plaintiff testified that he continued to have pain in his back. (Tr. 40). He cannot sit for longer than 15 to 20 minutes and can stand for an hour and a half or two hours at most because of the pain. (Tr. 47). He spends most of his days lying on his back on the floor or on the sofa and testified that laying down is better than standing or sitting. (Tr. 47). He testified that he could not show up every day at a job because he has too many doctor's appointments and because of the pain. (Tr. 48). He states that he has trouble bending at the waist (for example he cannot put socks on), and that he does not do much around the house. (Tr. 49-51). He testified that he can cut the grass using his riding mower for 15 minutes at a time but then he has to lie down. (Tr. 52). He does not sleep through the night, can drive a little bit, but not far, and can lift a gallon of milk but not two gallons. (Tr. 52-54).

### B. Vocational Expert's Testimony

Mr. Burnhill testified as to Plaintiff's past work history as an auto mechanic, which the Dictionary of Occupational Titles indicates is performed at the medium exertional level, "but it's always performed at the very heavy level as the claimant did." (Tr. 58). Mr. Burnhill was asked by the ALJ to consider a hypothetical involving an individual of Plaintiff's age, education, and work experience and to assume that the individual could "perform at the light exertional level; who [could] occasionally climb ramps and stairs; who [could] never climb ladders, ropes and scaffolds; who [could] occasionally balance, stoop, kneel, crouch, and crawl; who must avoid concentrated exposure to fumes, odors, dusts, gases poor ventilation and hazards such as machinery and

heights." (Tr. 58). The ALJ asked whether there are any jobs available at both light and sedentary levels that this hypothetical person could perform. (Tr. 58). Based on this information, Mr. Burnhill testified that there were jobs at both a light level (*e.g.* automotive technician, cashier, sorters) and a sedentary level (*e.g.* automotive service cashier, telephone quotation clerk, telephone solicitor) in the national economy and in Delaware. (Tr. 58-60).

When questioned by Plaintiff's counsel, Mr. Burnhill was asked whether an individual with "severe pain to the point where they cannot concentrate on what they're doing, their productivity is down by 15 to 20 percent, they need unscheduled breaks to deal with the pain and deal with taking medication, they need to lay down occasionally during the day for at least 15 minutes at a time . . . three times a day to relieve back pain" would be able to maintain employment. Mr. Burnhill testified that all entry level competitive work would be ruled out. (Tr. 60-61). Upon further questioning, Mr. Burnhill testified that a person could not maintain employment if he missed more than one day a month or if he had severe pain to the point where he could not maintain concentration for two-hour periods at a stretch. (Tr. 61).

As noted above, at the conclusion of the hearing the ALJ requested that Plaintiff have a Functional Capacity Evaluation ("FCE") by a physician other than one who had already seen or treated Plaintiff. (Tr. 65-66) ("How about an updated CE. I'd like to see one. . . . I'd like to send him to someone other than who he's seen or has been seeing.")

### C.     The ALJ's Findings

On December 19, 2014, the ALJ issued the following findings (Tr. 11-22):

1.     The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2.     The claimant has not engaged in substantial gainful activity since December 22, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: chronic back pain and spine disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards, such as machinery and heights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 29, 1968 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 22, 2009, through the date of this decision (20 CFR 404.1520(g)).

## III.  LEGAL STANDARDS

### A.  Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  A party asserting that a fact cannot be – or, alternatively, is –

genuinely disputed must support its assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**B.      Review of the ALJ's Findings**

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). Evidence that was not submitted to the ALJ can be considered, however, by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has made clear that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by

countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV. DISCUSSION

### A. Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the Social Security Income ("SSI") program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Zirnsak v. Colvin*,

777 F.3d 607, 611-612 (3d Cir. 2014). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating a finding of nondisability when claimant is engaged in substantial gainful activity); *Zirnsak*, 777 F.3d at 611. If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *Id.* If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (20 C.F.R § 404.1520, Subpart P, Appendix 1) that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Zirnsak*, 777 F.3d at 611. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *Id.* If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to step four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that claimant is not disabled if claimant is able to return to past relevant work); *Zirnsak*, 777 F.3d at 611. A claimant's RFC "is the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). "[T]he claimant always bears the burden of establishing (1) that she is severely impaired, and (2) either that the severe impairment meets or equals a listed impairment, or that it prevents her from

performing her past work." *Zirnsak*, 777 F.3d at 611 (quoting *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).

If the claimant is unable to return to his or her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him or her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of nondisability when claimant can adjust to other work). At this last step, ". . . the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Zirnsak*, 777 F.3d at 612 (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). In other words, the Commissioner ". . . is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). In making this determination, "the Commissioner uses the RFC assessment, . . . and the testimony of vocational experts and specialist." *Zirnsak*, 777 F.3d 612. "'Ultimately, entitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy.'" *Zirnsak*, 777 F.3d 612 (quoting *Provenzano v. Comm'r*, Civil No. 10-4460 (JBS), 2011 WL 3859917, at *1 (D.N.J. Aug. 31, 2011)).

### B.    Issues Raised on Appeal

On appeal, Plaintiff raises four arguments in support of a remand for either an award of benefits or for further development and analysis: (1) the ALJ's erred because he did not conduct a proper analysis regarding Plaintiff's spinal impairments; (2) the ALJ erred by failing to account for all of the functional limitations stemming from Plaintiff's numerous impairments; (3) the ALJ erred by failing to properly analyze the opinions of Plaintiff's treating sources; (4) the ALJ erred by failing to determine if Plaintiff was disabled for any 12-month period (particularly between

June 2010 and January 2012) due to his numerous surgeries, recovery from those surgeries, and medical appointments.  (D.I. 11).

### 1. The ALJ's Analysis of Plaintiff's Spinal Impairments/1.04 Listing Analysis.

Plaintiff asserts that the ALJ committed two errors in determining whether Plaintiff met the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04:  (1) the ALJ inaccurately interpreted the medical evidence and (2) the ALJ's Listing analysis was legally deficient.  (D.I. 11 at 7-8).  As the ALJ recognized:

> Listing 1.04 allows for a presumption of disability when there is evidence of disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, with: (A) evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or (B) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or (C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b (20 CFR Part 404, Subpart P, Appendix I).

The sum total of the ALJ's analysis regarding whether Plaintiff's conditions met the listing requirements is that "back impairment does not meet or equal the criteria of Listing 1.04. Specifically, the objective evidence simply fails to indicate listing-level nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis." (Tr. 15).  In doing so, the ALJ provided no analysis and no evaluation of any evidence to support his determination.  The Court recognizes that the ALJ need not explicitly refer to every exhibit in the record, but a "conclusory statement [like the one made here] without any supporting explanation or discussion warrants a remand for further

proceedings, since it renders meaningful judicial review of the determination impossible."[5]

*Lawrence v. Astrue*, No. 08-265J, 2010 WL 545880, at *4 (W.D. Pa. Feb. 16, 2010) (citing *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-120 (3d Cir. 2000)). The Court will, thus, remand for the ALJ to review the evidence and make a properly supported determination as to whether Plaintiff has met the requirements of Listing 1.04.

### 2. The ALJ's Determination of Plaintiff's Functional Limitations

Plaintiff argues that the RFC did not account for functional limitations including absenteeism, disturbed gait requiring use of a cane, medication side effects, mental functional limitations, and obesity. As noted below, the Court agrees in part.

As for absenteeism, Defendant asserts that "[i]t was Plaintiff's burden to prove that he could not attend to his medical care without taking a material amount of time from his workday, and his list of past medical appointments and recovery times does not suffice." (D.I. 14 at 12). As noted below, Plaintiff has offered evidence of the number of absences required over the time in question – a number that the VE agreed exceeded the number employers would tolerate. Despite that, the ALJ never addressed Plaintiff's absences or whether those should be included in the RFC determination. The ALJ's failure to do so renders meaningful judicial review of his determination impossible. The Court will remand for further proceedings on this issue.

As to plaintiff's gait, the ALJ purported to give great weight to the findings of Dr. Daya, but simply ignored her determination that Plaintiff "needs a cane" and that he had an "antalgic

---

[5]     Defendant asserts (D.I. 14 at 9) that "the decision as a whole demonstrates that the ALJ considered the clinical tests, diagnostic imaging, physical examinations, Plaintiff's treatment, and his physical abilities," but the fact remains that in making his listing determination, the ALJ offered no analysis or specific evidence for the Court to review. The Court declines to try to determine out what "objective evidence" the ALJ was referring to in his conclusory statement.

gait" with the conclusion that "the record does not document a prescription for a cane, or even use of an assistive device." Further findings are required.

As to the side effects of medications, the ALJ considered side effects that Plaintiff has experienced over time. (Tr. 15, 17). Plaintiff indicated that his medication caused constipation, hot sweats, a short temper, trouble sleeping, excessive sleeping and feeling "hung over." (Tr. 52, 178). In 2013, Plaintiff stopped taking Lyrica and the side effects he was experiencing resolved. (Tr. 1019, 1023). In 2014, Plaintiff repeatedly denied that his intrathecal pump caused side effects (Tr. 770, 776, 781, 911). The ALJ's findings with respect to side effects of medications are consistent with the evidence of record and supported by substantial evidence.

As to mental function limitations, the Court agrees that substantial evidence supports the ALJ's finding that Plaintiff's symptoms of depression and anxiety caused no more than "mild" limitations in any of the first three functional areas and no episodes of decompensation of extended duration in the fourth area.[6] (Tr. 14). Plaintiff took care of his children each school day – making them breakfast, packing their school lunches, and taking them to the bus stop. (Tr. 807). Plaintiff took care of himself, did chores, used a computer, drove his son to sports practice, went to sporting events and on vacation, and spent time with others. (Tr. 180-82, 292, 728, 734, 770, 807, 1005, 1024).

Finally, as to obesity, there is no question that Mr. Ashe suffers obesity. (Tr. 35, 1104 – BMI of 37.3). *See* SSR 02-1p, 2000 WL 628049 *2. Dr. Borek noted Plaintiff's obesity and indicated that obesity coupled with pain may negatively impact upon his ability to walk normally.

---

[6]    Pursuant to 20 C.F.R. § 404.1520a(c)(3) –there are four broad functional areas in which the degree of one's functional limitation is rated: (1) Understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

(Tr. 74). *See* SSR 02-1p, 2000 WL 628049 *6 (explaining that obesity can increase the impact of other impairments and can affect a wide range of abilities including the ability to stand, walk, lift, carry, stoop, crouch, and climb). The ALJ, however, never addressed or even mentioned obesity in his decision. Accordingly, since the ALJ never addressed this issue or explored any interplay between Mr. Ashe's obesity and his other impairments or any ensuing work related limitation, the Court will remand for further findings on this issue.

### 3. The ALJ's Treatment of Opinions by Treating Physicians

Plaintiff asserts that the ALJ failed "to properly analyze the opinions of Mr. Ashe's treating sources." (D.I. 11 at 17). As an initial matter, it is not for the Court to re-weigh the medical opinions in the record. *See Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 659 (D. Del. 2008). Rather, the Court must determine whether substantial evidence exists to support the ALJ's weighing of those opinions. *See id.* "[T]he ALJ is free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zirnsak*, 777 F.3d at 614.

Treating physicians' reports, however, "should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Rocco v. Heckler,* 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record.). A treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence,

but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Id.* (citing *Newhouse v. Heckler,* 753 F.2d 283, 286 (3d Cir.1985)).

Here, Dr. Rudin and/or his associates saw Plaintiff approximately 55 times from January 2010 to August 2014. During this time frame, they prepared multiple worker's compensation injury reports that indicated Plaintiff could not work. (Tr. 489, 492, 495, 498, 501, 504, 508-30, 799, 984-87). The ALJ gave those opinions "only some weight" noting that the "forms for Delaware Worker's Compensation do not provide any specific functional limitations," and asserting that "the clinical signs demonstrate that the claimant retains full strength, no atrophy, no muscle spasms, and normal gait. What is more, these statements do not reflect the claimant's recent improvement after his pain pump implantation." (Tr. 18-19). While Defendant cites to "diagnostic imaging and clinical test results, examinations, improvement after pain pump implantation, and Plaintiff's activities" as further support of the ALJ's decision to give Dr. Rudin's opinions some weight instead of controlling weight, the ALJ did not cite to any of that evidence or offer it as a supporting explanation. The Court will remand for the ALJ to reconsider the opinions and the medical record and provide a supporting explanation for his decision regarding the weight given to treating physician opinions.

### 4. The ALJ's Failure to Consider Whether Plaintiff Was Disabled For The Period Between June 2010 and January 2012.

Plaintiff asserts that he was disabled, at least, from June 2010 until January 2012 because absenteeism due to medical appointments, procedures, and recovery times, impacted his ability to work. (D.I. 11 at 24-27). He states that he had three surgeries along with the mandatory follow-up appointments during that time and includes a chart of missed days that indicates a total of 40.5 days of absence. (*Id.*). He also notes that the VE testified that employers do not allow more than one day a

month absenteeism. (Tr. 61). And that the VE's testimony is consistent with Agency policy and Third Circuit law. *See* 20 C.F.R. § 404.1545(b); SSR 96-8p, 1996 WL 374184 ("RFC is an assessment of an individual's ability to do sustained work-related . . . activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."); *see also Kangas v. Bowen*, 823 F.2d 775, 777-778 (3d Cir. 1987).

> In response, Defendant notes (D.I. 14 at 12):
>
> The ALJ considered the voluminous medical records, including Plaintiff's surgeries and recent pain relief from a pump implantation (Tr. 15-20). The ALJ also noted Dr. Rudin's August 2014 recommendation that Plaintiff undergo translumbar interbody fusion at L5-S1 and possibly L2-3 (Tr. 17, 1088). Therefore, the ALJ considered Plaintiff's many appointments and periods of recovery.

Defendant also notes evidence of improvements after some surgeries and asserts that Plaintiff "has failed to prove he was disabled for a 12-month period or that an RFC absenteeism limitation was warranted." (D.I. 14 at 12-13). Plaintiff, however, has offered evidence of the number of absences required over the time in question – a number that the VE agreed exceeded the number employers would tolerate. And the ALJ never addressed Plaintiff's absences or whether in light of them Plaintiff could have been employed on a "regular and continuing basis" during period in question. The ALJ's failure to do so or to consider whether a closed period of disability existed renders meaningful judicial review of his determination impossible. The Court will remand for further proceedings on this issue as well.

## V. <u>CONCLUSION</u>

For the reasons stated, the Court will grant-in-part and deny-in-part Plaintiff's motion and deny Defendant's cross-motion for summary judgment. This matter will be remanded for further proceedings consistent with this Opinion. An appropriate Order will issue.